UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 15-CIV-23420-GOODMAN

**[CONSENT CASE]**

KATCHMORE LUHRS, LLC

    Plaintiff,

v.

ALLIANZ GLOBAL CORPORATE
& SPECIALTY, and AGCS MARINE
COMPANY,

    Defendants.

_____/

## ORDER ON DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendants Allianz Global Corporate & Specialty ("Global") and AGCS Marine Insurance Company ("AGCS Marine") filed a motion for partial summary judgment [ECF No. 132] concerning the claim for $1,500 in damages under the "Loss of Charter Hire" provision of a marine insurance policy and a $10,000 damages claim under the "Fishing Gear and Personal Effects" provision of the same policy. Plaintiff Katchmore Luhrs, LLC filed an opposition response [ECF No. 170] and Defendants filed a reply [ECF No. 233]. For the reasons outlined below, the Undersigned **grants** the motion concerning the loss of charter hire damages but **denies** it concerning the claim for lost or damaged fishing gear and personal effects.

**PROCEDURAL DEFECTS**

Plaintiff did not file an adequate statement of disputed facts [ECF No. 171] in response to the statement of undisputed material facts which Defendants filed [ECF No. 133] in support of their partial summary judgment motion.

Defendants' Statement of Material Facts contains 13 separately-numbered paragraphs, using the format required by local rule. But Plaintiff's responsive statement does not respond to those 13 paragraphs, nor does it separately flag when its counter-statements begin. Instead, Plaintiff's purported statement [ECF No. 171] contains 32 separately-numbered paragraphs. They are not numbered in a way to correspond to Defendants' paragraph structure, nor do they expressly indicate whether they are responding to one of Defendants' numbered paragraphs or providing additional facts.

Apparently, Plaintiff intends for the Undersigned to comb through its confusing statement of facts and sift through it and the exhibits (and other exhibits it periodically submitted after its response was filed) and unilaterally decipher its response to each of the separate paragraphs clearly listed in Defendants' motion. In other words, Plaintiff's approach, contrary to local rule, requires me to, in effect, do its job.

Under Local Rule 56.1, the Undersigned has authority to deem as admitted all the facts submitted by Defendant in support of its arguments. As the plain language of Local Rule 56.1 states, "(a): A motion for summary judgment **and the opposition thereto** shall be accompanied by a **statement** of material facts as to which it is

contended . . . there does exist a genuine issue to be tried[.]" S.D. Fla. L. R. 56.1(a) (emphasis supplied). The Local Rule requires that such statement "(1) Not exceed ten (10) pages in length; (2) Be supported by specific references to pleadings, depositions, answers to interrogatories, admissions, and affidavits on file with the Court; and (3) Consist of **separately numbered paragraphs**." *Id.* (emphasis supplied).

Specifically, for statements of material facts submitted in *opposition* to a motion for summary judgment, the Local Rule requires "correspond[ence] with the order and **with the paragraph numbering scheme** used by the movant" and requires that "[a]dditional facts which the party opposing summary judgment contends are material shall be **numbered** and placed at the **end of the opposing party's statement** of material facts [.]" *Id.* (emphasis added). Failure of a respondent to file a statement of disputed facts, in the format as required above, causes "[a]ll material facts set forth in the movant's statement" to be "deemed admitted unless controverted by the opposing party's **statement**[.]" S.D. Fla. L. R. 56.1(b) (emphasis added).

When a party properly complies with Local Rule 56.1, it is relatively easy for a court to determine whether there is a genuine disputed issue of fact. Basically, all a court needs to do is look at the opposing statement of material facts on a paragraph-by-paragraph basis and quickly see whether any paragraphs are designated as disputed. When a party does not comply with the Local Rule, however, then it is exceedingly difficult for a court to discern if there is a factual dispute concerning a specific

3

paragraph. A court needs to review the entire opposing statement of facts and determine whether any particular sentence or paragraph is, in fact, a vague reference to some type of actual rebuttal evidence which might generate a disputed issue of material fact. This can be an arduous process, and, in any event, generates unnecessary work for the court and its staff.

Essentially, Plaintiff did not follow any of the procedural requirements of Local Rule 56.1. Its lack of compliance is so clear-cut that the Court undoubtedly has the discretion to deem Defendants' facts admitted and then enter partial summary judgment in Defendants' favor as Plaintiff's defective response essentially leaves the Court with "the functional analog of an unopposed motion for summary judgment." *Lugo v. Carnival Corp.*, 154 F. Supp. 3d 1341, 1343 (S.D. Fla. 2015) (admitting facts from defendant's undisputed material facts statement after reviewing the record based on plaintiff's violation of Local Rule 56.1); *Regions Bank v. 62' Ocean Sport Fish*, No. 13–20966–CIV, 2014 WL 4055707, at *2 (S.D. Fla. Aug. 14, 2014) (admitting undisputed facts in plaintiff's statement supported by the record based on defendants' violation of Local Rule 56.1).[1]

In *Rives v. Lahood*, the Eleventh Circuit addressed a somewhat analogous situation where the non-moving party violated the local rule by failing to file an

---

[1] On the other hand, Defendants did not file a motion to strike Plaintiff's opposition response for violating the Local Rule.

4

opposing statement of facts. 605 F. App'x 815, 818 (11th Cir. 2015). The *Rives* court held that the district court had not erred in accepting the movant's statement of facts as true when the non-movant failed to file a counter-statement of material fact. *Id.*

Because Plaintiff failed to submit a rule-compliant opposing statement of disputed material facts and likewise failed to submit a conforming counter-statement of additional facts, the Undersigned is being asked to step into the shoes of Plaintiff's attorney and determine what evidence could possibly support the claims Plaintiff is making in opposition to Defendants' motion. I am also being asked to review all 32 paragraphs and see whether any of them demonstrate a factual dispute with any of the 13 paragraphs in Defendants' statement, and, if so, to cross-reference the submissions and figure out which specific paragraphs are indeed disputed. And I am being asked to do this without any logical numbering system.

Thus, paragraph 28 of Plaintiff's statement could conceivably relate to paragraph 4 of Defendants' submission, or it could relate to paragraph 2 or 6 or 11. Or maybe paragraph 28 is a purported *additional* fact, and does not directly relate to any of the 13 paragraphs. To properly analyze the competing factual assertions in this chaotic scenario generated by Plaintiff's failure to follow the local rule, I would need to prepare my own spreadsheet, cross-referencing Defendants' disorganized factual assertions to the specifically numbered facts provided by Plaintiff.

However, it is not my role, when reviewing a summary judgment motion, to make arguments for Plaintiff (or evaluate non-compliant submissions to discern whether they create a factual dispute) so that its lawsuit (or certain claims in the lawsuit) may proceed to trial in the face of a comprehensive, evidence-laden submission from Defendants.

Because Plaintiff has not filed an acceptable statement of disputed material facts or additional facts, the Court *could* treat Defendants' statement of facts as true and not consider Plaintiff's additional factual statements (wherever they may be buried in the 32-paragraph submission). But, notwithstanding Plaintiff's procedural failings, it is clear that there *are* some factual disputes and that some of them will preclude a portion of the requested relief. These disputes will be discussed, where appropriate, in the body of this Order.

**FACTUAL BACKGROUND**

The Insurance Policy provides coverage for "Loss of Charter Hire." The limit of this coverage is $1,500. This portion of the Policy states:

> **Loss of Charter Hire** — We will pay up to $250 for one lost charter hire per day or the amount of charter hire, whichever is less, if your Watercraft had any **written charter party agreements that could not take place** because of a covered loss. For each covered loss to your Watercraft, coverage applies for the amount of time that your Watercraft would have been chartered under the charter party agreements, for up to 30 days, but we will pay no more than $1,500 in the aggregate during the policy term. No deductible applies to this coverage. This coverage will not apply in the event of a total loss of your Watercraft.

[ECF No. 133-1, p. 8] (emphasis added).

This "Loss of Charter Hire" provision was amended to include "oral agreements for charter" on or about July 24, 2014. This amendment was effected by Endorsement No. 8, which expressly states that the date of this Endorsement is February 20, 2015. [ECF No. 133-1, p. 33]. The Endorsement further provides that "ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED. DATED 7/24/2014." [ECF No. 133-1, p. 33].

Although Endorsement No. 8 (which went into effect on February 20, 2015) does mention "oral agreements," it conditions the coverage for an oral charter agreement:

> [A]ny oral agreements [the insured makes] must have been **confirmed** by [the insured] prior to the date of loss using **electronic mail (email) or regular mail** and **show** the date and duration of the charter, the agreed cost and person or organization that is agreeing to the charter.

[ECF No. 133-1, p. 33] (emphasis supplied).

Plaintiff seeks damages for Loss of Charter Hire. Although requested to do so by Defendants in discovery, Plaintiff did not produce any written charter party agreement, nor did it produce any documents reflecting the existence of charters or that Plaintiff had taken individuals on charter trips. In addition, Plaintiff did not produce any **confirmation** showing the duration of any charter agreements, the agreed cost or the person or organization agreeing to the charter.

A managing member of Plaintiff is Clarke Zingone, and Mr. Zingone served as Plaintiff's corporate representative. During its corporate 30(b)(6) deposition, Plaintiff

testified that its business is a "100 percent cash business." [ECF No. 133-2, p. 7]. Plaintiff further admitted that it did not keep any records "concerning charters and the cash that was received from the people that hired the company and or the boat for charter". [ECF No. 133-2, p. 8].

Plaintiff also admitted that since its inception that it has been a "100 percent cash business that has never had any records." [ECF No. 133-2, p. 8].

Plaintiff did, however, provide deposition testimony from Andy Palucha, who claimed that he had paid Plaintiff for commercial charter trips in the past and was unable to do so in the future because of the loss of the vessel. Mr. Palucha said: "I had an unbelievable time. I wish it didn't sink so I could go again with him. He's a great guy, and I love going fishing with him. I haven't been fishing since, because obviously his boat sank[.]" [ECF No. 170-5, p. 21].

The Policy also provides coverage for "Fishing Gear and Personal Effects." In pertinent part, the Policy states:

> Fishing Gear and Personal Effects – We cover the loss **or damage** to fishing gear and personal effects belonging to you on board or used in the water with the Watercraft. We will pay the actual cash value of the covered personal effects at the time of the loss or the amount shown on the Declarations, whichever is lower, less a deductible of $100 for each occurrence. We will not be liable for Personal Effects for any amount beyond that amount.

[ECF No. 133-1, p. 7]. (emphasis supplied).

Plaintiff seeks damages for Fishing Gear and Personal Effects. The parties dispute whether Plaintiff lost covered property. Defendants focus on the fact that Plaintiff did not "lose" property because they say Plaintiff (1) conceded it has no knowledge of any equipment missing from the vessel; (2) testified that it removed all of its fishing rods from the vessel; (3) testified that there was still some equipment on the vessel; and (4) confirmed that it has recovered "basically all" of the equipment and fishing rods from the vessel since it sank.

But Defendants stridently challenge these contentions, arguing that there is a dispute about whether all fishing rods were removed. Moreover, Plaintiff emphasizes that the policy provides coverage for loss **and** damage, not merely loss. Therefore, for example, a fishing rod removed from the vessel might still be covered under the policy if it was damaged.

The two provisions at issue in the partial summary judgment motion are identified in Section B of the Policy, entitled "Additional Coverage." Under the Policy, Plaintiff may recover for Loss of Charter Hire only if the vessel is deemed to **not** be a total loss. Fishing gear and other personal effects are recoverable regardless of the amount of the loss. The parties disagree on whether the vessel is a total loss.

**APPLICABLE LEGAL STANDARDS AND ANALYSIS**

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). When "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal citation and marks omitted). If the movant establishes the absence of a genuine issue, then the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

For issues on which the opposing party will have the burden of proof at trial, the movant can prevail by merely pointing out that there is an absence of evidence to support the non-movant's case. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24 (1986). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original).

An issue of fact is genuine "if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). In applying this standard, the district court must view the evidence and all factual inferences in the light most favorable to the party opposing the summary judgment motion. *Id.* at 646 (internal citation omitted).

Nevertheless, the non-movant cannot defeat summary judgment by: (a) "rest[ing] upon mere allegations or denials," *Woolsey v. Town of Hillsboro Beach*, 541 F.

10

App'x 917, 919 (11th Cir. 2013); (b) "simply *saying* the facts are in dispute," *Latele Television, C.A. v. Telemundo Commc'ns Grp., LLC*, No. 12-22539, 2014 WL 7272974, at *7 (S.D. Fla. Dec. 18, 2014); or (c) relying on "evidence that is merely colorable or not significantly probative," *Fields v. Gorman*, No. 09-61466, 2010 WL 3769396, at *3 (S.D. Fla. Sept. 3, 2010). "Rhetoric and attorney argument are no substitute for record evidence." *Latele*, 2014 WL 7272974, at *7.

To the contrary, the opposing party has a duty to present affirmative evidence to defeat a properly supported summary judgment motion. *Anderson*, 477 U.S. at 252. Indeed, "Rule 56 mandates the entry of summary judgment, upon motion, against a party who fails to make a showing sufficient to establish an element essential to his case on which he bears the burden of proof at trial." *Schechter v. Ga. State Univ.*, 341 F. App'x 560, 562 (11th Cir. 2009) (citing *Celotex*, 477 U.S. at 322).

Conclusory allegations, subjective beliefs, opinions, and unsupported assertions are insufficient as a matter of law to withstand summary judgment. *See Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996) (finding that conclusory allegations and conjecture cannot be the basis for denying summary judgment); *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 597 (11th Cir. 1987) ("[C]onclusory allegations of discrimination, without more, are not sufficient to raise an inference of . . . intentional discrimination[.]"); *St. Hilaire v. The Pep Boys–Manny, Moe & Jack*, 73 F. Supp. 2d 1350, 1359 (S.D. Fla. 1999) ("[a plaintiff's] mere belief, speculation, or conclusory accusation

11

that he was subject to discrimination will not suffice to create an inference of discrimination or satisfy his burden when responding to a properly supported motion for summary judgment.").

The Charter Party Claim

In its response, Plaintiff argues that the term "charter party agreement" is "an ambiguous term which is not properly defined by the contract and has no 'generally accepted' definition, legal or otherwise." [ECF No. 170, p. 18]. It says the term "could be reasonably interpreted in a myriad of ways," but it offers only one way. [ECF No. 170, p. 19]. Plaintiff argues that the term "charter party agreement" would lead to a "liberal construction" to "encompass any document or oral agreement which could reflect or evidence the loss of charter revenue as a result of the loss in question." [ECF No. 170, p. 19]. And Plaintiff then argues that this supposed ambiguity means that the term should be construed against the drafter (i.e., the insurance carrier).

The Undersigned disagrees. The term "charter party agreement" is not, as Plaintiff argues, susceptible to a "myriad" of interpretations.

Under Florida law, courts must give effect to the plain language of contracts when that language is clear and unambiguous. *See generally Arriaga v. Fla. Pacific Farms, LLC,* 305 F.3d 1228, 1246 (11th Cir. 2002) (citation omitted). Whether a contract provision is ambiguous is a question for the court. *Arriaga*, 305 F.3d at 1246 (citing *Strama v. Union Fid. Life Ins. Co.*, 793 So. 2d 1129, 1132 (Fla. 1st DCA 2001)). Additionally, "an ambiguity

is not invariably present when an insurance contract requires interpretation, and the mere failure to define a term involving coverage does not necessarily mean a term is ambiguous." *TIG Ins. Co. v. Smart School,* 401 F. Supp. 2d 1334, 1342 (S.D. Fla. 2005) (citation omitted); *see also Gen. Star Indem. Co. v. W. Fla. Village Inn, Inc.*, 874 So. 2d 26, 30 (Fla. 2d DCA 2004) (finding that the lack of a definition in an operative term does not, by itself, create ambiguity in an insurance policy).

The mere fact that Plaintiff says the term is ambiguous does not make it so. Likewise, Plaintiff's ability to assert a different interpretation does not mean the term is ambiguous. Moreover, when assessing Plaintiff's argument that the phrase "charter party agreement" is ambiguous, the Undersigned should not evaluate the phrase in isolation from other Policy provisions. *Cont'l Ins. Co. v. Collinsworth,* 898 So. 2d 1085, 1087-89 (Fla. 5th DCA 2004) (reversing declaratory judgment ruling against insurance carrier in a wrongful death lawsuit because the term "any speed race" is unambiguous even though it was not specifically defined in the marine insurance policy, and holding that any further resort to contract interpretation rules would be unnecessary).

The term "charter party agreement" is a term commonly used in the maritime community. In fact, the Fifth Circuit Court of Appeals defined "charter party agreements" as "essentially contracts" which are subject to "the general rules of contract law." *See Cont'l Ins. Co. v. J. Ray McDermott, Inc.,* 80 F. App'x 355, 356 (5th Cir. 2003) (citation omitted) (reversing judgment for charterer and rendering judgment in

13

favor of the insurance carrier which issued hull insurance). Additionally, the term "charter" is defined as "to hire, rent, or lease for usually exclusive and temporary use <*chartered* a boat for deep-sea fishing>." *Charter*, MERRIAM-WEBSTER.COM, www.merriam-webster.com/dictionary/charter (last visited Jan. 10, 2017); *see also Hrynkiw v. Allstate Floridian Ins. Co.*, 844 So. 2d 739, 742 (Fla. 5th DCA 2003) (affirming order granting insurer's motion for judgment on the pleadings after interpreting policy language according to its "everyday meaning" and determining if it is "understandable to a layperson") (footnote omitted).

Defendants contend that the effective date of Endorsement No. 8 (which provides coverage for oral agreements for charter) is February 20, 2015, not July 24, 2015. They further note that Plaintiff's loss is alleged to have occurred on January 1, 2015, which predates the effective date of Endorsement No. 8 (which means the coverage in place at the time required written charter party agreements in place). But the Undersigned need not determine whether to accept or reject Plaintiff's argument that Endorsement No. 8 applies because Defendants are entitled to partial summary judgment *even if* I were to adopt Plaintiff's view and find Endorsement No. 8 applicable.

As explained above, Plaintiff did not provide written confirmation (through "electronic mail (email) or regular mail" of oral agreements for charters. The mere fact that one paying customer explained that he wished the vessel had not sank because he would have liked to have gone out on another fishing charter is not sufficient to confirm

14

that a charter agreement had in fact been made and **confirmed.** The comment is not a confirmation of an *agreement;* it is an after-the-fact, speculative, generic wish that perhaps one day it would be nice to take another charter on Plaintiff's vessel.

Defendants are entitled to partial summary judgment on the charter party claim.

### The Fishing Gear and Personal Effects Claim

In opposing Defendants' partial summary judgment motion, Plaintiff submitted Captain Zingone's affidavit. Among other points raised in the affidavit, Captain Zingone said "all of the electrical equipment and components were damaged[.]" But, even if true, this assertion is irrelevant to the current motion -- which concerns "loss of fishing gear and personal effects." Electronics is covered by a *different* paragraph in the policy -- a paragraph on which Defendants are not here seeking to obtain partial summary judgment.

Paragraph 4 of the Policy provides:

> **Electronic Equipment** shall mean: all permanently installed electronic and related equipment used for communication or navigation of the **watercraft**.

[ECF No. 133-1, pp. 2, 5].

The definition of **Insured Watercraft** found in paragraph 7(c) is entirely consistent with this distinction. **Insured Watercraft** is defined to include: "(3) tools, marine electronics (including portable marine electronics) charts, maps or similar property[.]"[ECF No. 133-1, pp. 2, 6].

15

Because "Electronic Equipment" is separately defined and set apart from the definition of "Fishing Gear and Personal Effects" found in paragraph 5 of the Policy definitions, it is distinct from "Fishing Gear" and is part of the "Insured Watercraft." Plaintiff also seeks recovery for items identified paragraph 7(c)(l) of the **Insured Watercraft** definition:

> (1) the hull, spars, sails, winches, rigging, fitting, ships tackle and other equipment **carried aboard as normally required for the operation,** navigation or maintenance of **the insured watercraft.**

[ECF No. 133-1, pp. 2, 6] (emphasis added).

Consequently, Plaintiff's claims for chain, anchor rope, hydraulic piston, fuel filters, poly balls fenders, battery charger, batteries, cushions for seats, docking lines plugs, and electric cable, simply are not compensable under the "Fishing Gear and Personal Effects" provision of the Policy. Likewise, there is no basis for Plaintiff's inclusion of "GPS and electronics; Marine Radio and Antenna; Lorance Depth Finder" or screw drivers, ratchets, toolset, or an electric saw as items for which it seeks compensation under the Fishing Gear provision of the Policy. [ECF No. 170-22].

Therefore, Plaintiff cannot prevent the entry of partial summary judgment in Defendants' favor on the "fishing gear and personal effects" provision by pointing to these types of alleged losses.

However, there is another reason -- i.e., the existence of factual disputes -- which prevent Defendants from obtaining partial summary judgment.

As noted above, the provision at issue provides protection for more than fishing gear which has been "lost;" it also provides coverage for damaged gear. Thus, the mere fact that Plaintiff recovered an item from the vessel does not preclude recovery if that recovered or retrieved item is also damaged.

Based on the conflicting evidence submitted by the parties, the Undersigned cannot conclude that Defendants have established an absence of genuine material facts concerning fishing gear which was either lost or damaged. Therefore, the Undersigned **denies** Defendants' partial summary judgment motion concerning claims under the "fishing gear" provision of the policy.

**CONCLUSION**

The Undersigned grants, in part, Defendants' summary judgment motion. Specifically, I grant it on the $1,500 "charter hire" claim and deny it on the $10,000 "fishing gear" coverage claim.

**DONE and ORDERED** in Chambers, in Miami, Florida, on January 18, 2017.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
All Counsel of Record